IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CATHERINE J. COOK,<br><br>        Plaintiff,<br><br>v.<br><br>NEW YORK MOVING & STORAGE, INC. d/b/a NY MOVING GROUP; NY INTERNATIONAL SHIPPING, INC. d/b/a NY MOVING GROUP; NY INTERNATIONAL SHIPPING, LLC d/b/a NY MOVING GROUP; DEPENDABLE ENTERPRISES, INC. d/b/a DEPENDABLE MOVING; WHITE GLOVE MOVING AND STORAGE, INC.; and DOES 1 THROUGH 10,<br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [35], [59] MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING [40] MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>Case No. 2:19-cv-00098-DBB-JCB<br><br>District Judge David Barlow |
| NEW YORK MOVING & STORAGE, INC.; and NY INTERNATIONAL SHIPPING, INC.,<br><br>        Cross Claimants,<br><br>v.<br><br>DEPENDABLE ENTERPRISES, INC.; and WHITE GLOVE MOVING AND STORAGE, INC.,<br><br>        Crossclaim Defendants. | |

Plaintiff hired Defendant New York Moving & Storage (NYMS) to move her household

effects from New York to Utah. When Plaintiff's household items arrived in Utah, she

discovered many items damaged and others missing. Movers or goods carriers are generally

liable for damage to goods entrusted to their transport. However, in exchange for lower shipping rates, they may limit their liability if certain conditions are met.

Before the court are three motions for partial summary judgment primarily addressing whether Defendants effectively limited their liability for the damage to Plaintiff's shipment.[1] Defendant White Glove Moving & Storage (White Glove) also requests dismissal of claims against it, contending it played no part in the move.[2] Having considered the briefing and relevant law, the court grants Defendants' motions for partial summary judgment and denies Plaintiff's motion for partial summary judgment.

## BACKGROUND

On April 1, 2014, New York Moving and Storage (NYMS) adopted a set of standard contractual rates, classifications, rules, and practices applicable to interstate transportation of household goods.[3] In this document, referred to as a tariff, NYMS requires consumers ("shippers") to select one of two types of protection for their shipped goods—standard or extended coverage.[4] The tariff defines "Coverage" to mean "the type of protection selected by the shipper for their goods, and is not to be confused with the mandatory insurance requirements of a licensee." Under the section "Payment Terms," the tariff provides:[5]

---

[1] Defendants New York Moving & Storage (NYMS), NY International Shipping, Inc., and NY International Shipping, LLC (collectively, New York Defendants) seek partial summary judgment on Defendants' level of liability. ECF No. 35. Plaintiff seeks partial summary judgment on the Defendants' level of liability. ECF No. 40. Defendants Dependable Enterprises, Inc. (Dependable) and White Glove Moving and Storage, Inc. (White Glove) seek partial summary judgment on the Defendants' level of liability. ECF No. 59.

[2] ECF No. 59.

[3] ECF No. 35-1 at NYMS-179–193.

[4] ECF No. 35-1 at NYMS-179 (defining the term "Coverage"); NYMS 184–85 (requiring the consumer to select one of two protection options); *see* 49 U.S.C. § 14706(c)(1)(B) (describing the tariff as a "written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based"); *see also Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir. 2000) ("Today carriers adopt standard contractual terms, which some call 'tariffs' out of habit, but which have no effect apart from their status as contracts.").

[5] ECF No. 35-1 at NYMS-193.

**FULL REPLACEMENT INSURANCE RATES ($5000 min coverage)**

| Deductible | up to 30 days | Above 30 days needs to purchase storage insurance |
|---|---|---|
| $0 | 3% + $65 processing | 1.50% |
| $500 | 2.5% + $65 processing | 1% |

In late 2016, Plaintiff, the shipper, sought help moving furniture, paintings, and antiques, among other household goods, from New York to Utah.[6] Plaintiff selected the services of the New York Defendants for the move.[7] On September 29, 2016, the New York Defendants sent Plaintiff a written estimate (the Binding Estimate) that estimated the volume of items to be shipped at 1033 cubic feet and the cost at $6,160.[8] The Binding Estimate provided two "Valuation Coverage" options: (1) "Standard movers minimum liability coverage of $0.60 per pound per lost/damaged article;" and (2) "Extended valuation coverage for a full replacement value is offered here at 2.5% of the declared value of your shipment plus $65 processing. (Min. of $5,000 coverage with $500 deductible)."[9] The Binding Estimate also provided the following in red ink (the rest of the Binding Estimate was in black or blue ink):

> WARNING: If a moving company loses or damages your goods, there are 2 different standards for the company's liability based on the types of rates you pay. BY FEDERAL LAW, THIS FORM MUST CONTAIN A FILLED-IN ESTIMATE OF THE COST OF A MOVE FOR WHICH THE MOVING COMPANY IS LIABLE FOR THE FULL (REPLACEMENT) VALUE OF YOUR GOODS in the event of loss of, or damage to, the goods. This form may also contain an estimate of the cost of a move in which the moving company is liable for FAR LESS than the replacement value of your goods, typically at a lower cost to you. You will select the liability level later, on the bill of lading (contract) for your move. Before selecting a liability level, please read "Your

---

[6] Verified Complaint, ECF No. 5-1 at ¶¶ 19, 20.

[7] ECF No. 35-1 at COOK-66; ECF No. 5-1 at ¶ 22. The New York Defendants are New York Moving & Storage, Inc.; New York International Shipping, Inc.; New York International Shipping, LLC; and New York Moving Group.

[8] ECF No. 35-1 at NYMS-194.

[9] *Id.* at NYMS-195.

Rights and Responsibilities When You Move," provided by the moving company, and seek further information at the government website www.protectyourmove.gov.[10]

Plaintiff eventually signed the Binding Estimate on a line immediately underneath the foregoing red-ink warning.[11]

On October 10, 2016, Plaintiff emailed NYMS and expressed concern about the quoted price changing: "I fear that based on the high discrepancy I've been getting on estimates, that I can't count on this size estimate or the price. I need to be certain I know all of the charges I will be subject to as well as the rate per cu. ft. And will any of this change when transferred to another truckload? Are there any additional charges that could be made on the other end?"[12] Plaintiff also asked for pricing at various higher cubic foot volumes.[13] That same day, NYMS responded to her email and provided the higher cubic foot volume pricing Plaintiff requested.[14]

On October 13, 2016, Plaintiff emailed NYMS with more cost concerns, stating, "I am getting very concerned about the cost of this move and want to do everything I can to avoid incurring additional costs . . . . I need to know what, if any additional charges could possibly be added later at delivery . . . . As I mentioned, I am very concerned about cost."[15]

That same day, NYMS emailed Plaintiff some documents including an insurance form and stated,

> We highly recommend insuring any high value goods at the very least. Insurance is charged as $500.00 deductible Policy with a fee of 1.5% of the value you would

---

[10] ECF No. 35-1 at NYMS-195–96.

[11] ECF No. 35-1 at NYMS-195–96.

[12] *Id.* at COOK-67-68.

[13] *Id.*

[14] *Id.* at COOK-67.

[15] ECF No. 60-1 at COOK-47–48.

like to insure . . . . Plus a $65 processing fee. The minimum total value that you can insure is $5000.00.[16]

On October 19, 2016, NYMS arrived to pick up Plaintiff's household goods. After loading the shipment, NYMS provided Plaintiff a Uniform Household Goods Bill of Lading and Freight Bill (Bill of Lading). The NYMS foreman indicated Plaintiff had fifteen minutes to review and complete the Bill of Lading or delay charges would accrue. The Bill of Lading incorporated NYMS's tariffs and noted they would be provided on request.[17] It also contained two options for liability in a provision explaining, in red ink:

THE CONSUMER MUST SELECT ONE OF THESE OPTIONS
FOR THE CARRIER'S LIABILITY FOR LOSS OR DAMAGE TO YOUR
HOUSEHOLD GOODS
CUSTOMER'S DECLARATION OF VALUE: THIS IS A TARIFF LEVEL OF
CARRIER LIABILITY – IT IS NOT INSURANCE.[18]

Option 1 provided "Full (Replacement) Value Protection," which was "the most comprehensive plan available for protection of your goods."[19] Under this option, the cost of the move would be "composed of a base rate plus an added cost reflecting the cost of providing this full value cargo liability protection" to the shipment.[20] Option 1 provided a space for Plaintiff to declare the value of the shipment and noted that a nominal shipment value of $6,000 would be applied if Plaintiff did not declare a value. Plaintiff did not declare a value or select Option 1.[21]

---

[16] *Id.* at COOK-73–74.

[17] *Id.*at COOK-54 (providing notice that "Carrier's tariffs . . . are made a part of the bill of lading and may be inspected at carrier's facility, or, on request, carrier will furnish a copy of any tariff provision containing carrier's rates, rules or charges governing the shipment").

[18] *Id.*

[19] ECF No. 35-1 at COOK-54.

[20] *Id.*

[21] *Id.*

Option 2 was the "WAIVER of Full (Replacement) Value Protection," which offered a "lower level of protection . . . at no additional cost beyond the base rate."[22] This option provided "only minimal protection that is considerably less than average value of household goods."[23] The settlement value for a lost or damaged item would be the weight of the article multiplied by $0.60. Plaintiff signed her initials next to the statement: "I wish to Release My Shipment to a MAXIMUM VALUE of 60 Cents per Pound per Article."[24] Plaintiff also signed Option 2 acknowledging her waiver of the Full Value Protection option and indicating receipt of the "Your Rights and Responsibilities When You Move" brochure.[25] NYMS then moved the goods to storage, combined them with some of Plaintiff's other stored goods, and then temporarily housed the shipment before the cross-country move.[26]

On October 22, 2016, Plaintiff indicated she was heading to Utah and requested a final assessment of the volume of the shipment.[27] Plaintiff also stated she "will have to pass on the insurance, so deduct that," thanked NYMS for its work, and noted, "If the big mover is that cautious, I'm sure I won't need to worry."[28]

Two days later, NYMS again recommended additional coverage: "I would still advise to get the insurance, keep in mind you already have one box that is damaged so it is best to take out

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Verified Complaint at ¶¶ 26, 27; Mazafi Depo. at 171:23–172:9; ECF No. 59 at ¶ 4; ECF No. 68 at ¶ 4; ECF No. 35 at 5; ECF No. 38 at ¶¶ 13, 14.

[27] ECF No. 35-1 at COOK-66.

[28] *Id.*

insurance just in case there is anything else that happens you will be covered. Better safe than

sorry is my motto!" and sent Plaintiff a copy of the insurance forms a few days later.[29]

On November 7, 2016, NYMS requested that Plaintiff "advise if you wish to insure your

items."[30] Three days later, Plaintiff responded "I'm afraid I cannot afford to add additional

insurance, just your basic. So Please just urge them to be careful."[31]

Under an agreement with NYMS, Dependable transported the shipment to Utah, arriving

December 15, 2016.[32] The vehicle identified Dependable as the operator and on the side of the

trailer were the words "White Glove Service."[33] White Glove Service is a term of art in the

moving and logistics industry referring to a type of full-service move experience offered to

customers including unpacking items, putting items into cabinets and clothes in drawers.[34]

Dependable rented the truck but owns and operates the trailer.[35] Upon delivery, Plaintiff

discovered additional damage[36] to many of her goods and determined that some items were not

delivered.[37]

---

[29] *Id.* at COOK-65, COOK-73.

[30] *Id.* at COOK-72.

[31] *Id.* at COOK-67.

[32] Verified Complaint at ¶¶ 50, 51, 74; Minz Decl. at ¶ 4, ECF No. 59-1 at 117.

[33] Verified Complaint at ¶ 52. Dependable rented the truck used to deliver the shipment. Minz Decl., ECF No. 59-1 at 117–18.

[34] Minz Decl. at ¶ 12, ECF No. 59-1 at 117; Mazafi Depo. at 231, ECF No. 59-1.

[35] Minz Decl. at ¶¶ 5, 7, ECF No. 59-1 at 117.

[36] Plaintiff also noted some pre-move damage to items in storage. *See* ECF No. 35-1 at COOK-65 (NYMS advising that Plaintiff get insurance, noting "you already have one box that is damaged so it is best to take out the insurance just in case there is anything that happens you will be covered").

[37] Verified Complaint at ¶¶ 60–62.

## STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[38] The moving party bears the initial burden and, if the burden is satisfied, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts, identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein, from which a rational trier of fact could find for the nonmovant."[39] The court views the evidence and draws reasonable inferences in the light most favorable to the nonmoving party.[40]

## DISCUSSION

### I. Defendants Limited Their Liability Under the Carmack Amendment.

In the context of a household goods shipment, a carrier of household goods is liable for the "amount equal to the replacement value of such goods, subject to a maximum amount equal to the declared value of the shipment," unless waived by the shipper.[41] If the shipper declares a value for the shipment, that amount "becomes the maximum amount for which the moving company would be liable in the event of a total loss of the customer's shipment."[42] If the shipper elects full-value shipment protection but does not declare a shipment value, the Surface Transportation Board (STB) has authorized the use of a formula to determine the value of the shipment (weight by fixed amount per pound set by consumer economic indicator) or a fixed

---

[38] Fed. R. Civ. P. 56(a).

[39] *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (citation and internal quotation marks omitted).

[40] *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197 (10th Cir. 2000).

[41] 49 U.S.C. § 14706(f)(2).

[42] Released Rates of Motor Common Carriers of Household Goods (STB Released Rates), RR 999 (Amendment 5) (Surface Transportation Board, January 12, 20122), available at https://www.stb.gov/decisions/readingroom.nsf/fc695db5bc7ebe2c852572b80040c45f/9265cb1e541c20cd85257982 00765013?OpenDocument (January 12, 2012).

value, whichever is higher.[43] However, for a lower transportation cost, the shipper may elect

minimal protection for their goods—waiving the full-value protection. In other words, if not

liable for the declared value (or nominal value) of the cargo, carriers are responsible for

minimum "released rates" set by the STB.[44] The released rate, sometimes called the base rate, is

$0.60 per pound per article and was the basic coverage rate employed by NYMS for the move in

this case.

Defendants NYMS and Dependable argue that NYMS took the steps necessary to limit

liability for the damage to Plaintiff's shipment, and therefore contend they are responsible only

for the much lower released or base rate.

A carrier may limit its liability if it: (1) "maintain[s] a tariff within the prescribed

guidelines of the Interstate Commerce Commission;" (2) gives the shipper a reasonable

opportunity to choose between two or more levels of liability; (3) obtains the shipper's

agreement as to choice of liability; and (4) issues a receipt or bill of lading prior to moving the

shipment.[45] "Since the [Interstate Commerce Commission] no longer exists, the first requirement

has been replaced with the requirement that 'a carrier . . . provide a shipper with the carrier's

tariff if the shipper requests it.'"[46]

---

[43] *See id.*

[44] *See* 49 U.S.C. § 14706(f)(3); 49 C.F.R. § 375.201(c).

[45] *Norton v. Jim Phillips Horse Transp., Inc.*, 901 F.2d 821, 827 (10th Cir. 1989).

[46] *Bullocks Express Transp., Inc. v. XL Specialty Ins. Co.*, 329 F. Supp. 2d 1246, 1255 (D. Utah 2004) (quoting *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 841 (11th Cir. 2003)). The Surface Transportation Board (STB) replaced the ICC. Instead of this four part test, Dependable argues that a carrier's limited liability in the household goods context should be analyzed under a simplified test—(1) did the carrier offer the opportunity to accept or waive full value protection, and (2) did the shipper waive full value protection in writing? *See* ECF No. 59 at 18–24. The court finds no support for this proposed test in the statute or in case law and therefore declines to apply this proposed test.

### a.  Defendant NYMS Maintained a Tariff and Made it Available Upon Request.

The Carmack Amendment requires carriers to provide to a shipper, "on request of the

shipper, a written or electronic copy of the rate, classification, rules, and practices upon which

any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based."[47]

These rates, rules, and practices were incorporated into NYMS's household goods transportation

tariff, which it issued in 2014.[48] Although available for review, Plaintiff did not request the tariff

prior to her move.

Plaintiff asserts that her questions about the cost of the move might be viewed as a

request for the tariff, but this is not supported by the record. The record is clear that Plaintiff was

very focused on not having the price for her move exceed the estimate. One of her emails to

NYMS stated "I am getting very concerned about the cost of this move and want to do

everything I can to avoid incurring additional costs . . . . I need to know what, if any additional

charges could possibly be added later at delivery . . . . As I mentioned, I am very concerned

about cost."[49] She wanted to "be certain there are no additional charges beyond the size of the

load." She also was not sure how many cubic feet of space her goods would occupy—she was

trying to sell some of them—and so wanted to know "more details about the amount of [cubic

feet] you estimated or the size of the load and the rate?"[50] She also wanted to avoid the shuttle

charge (a charge where a smaller moving van supplements the larger van because of limited

---

[47] 49 U.S.C. § 14706(c)(1)(B).

[48] Cook asserts that NYMS did not maintain a tariff, and that, if it did, she requested it. ECF No. 38 at 25 ¶¶ 1, 2. These conclusory assertions do not raise genuine issues of fact, however, because NYMS has produced its 2014 tariff and Cook offers no evidentiary support for her contrary position.

[49] ECF No. 60-1 at COOK-47-48.

[50] ECF No. 35-1 at COOK-68; *id.* at COOK-39 (requesting "details about the amount of cu ft [NYMS] estimated or the size of the load as well as the rate" in order to "be certain there are no additional charges beyond the size of the load").

access to a property): "I think you mentioned you would try to avoid the shuttle charge?" And

Plaintiff also asked about "additional charges that could be made on the other end[.]"[51]

       But none of these questions and concerns requested the tariff or sought information about

the issue in this case: declaring a higher value to get greater coverage for an additional fee.

Plaintiff simply (and understandably) wanted to make sure that her cross-country move did not

become more expensive if she had more furniture than estimated, an additional smaller vehicle

was needed, or additional charges were possible at the end of the move. These questions were

not a request for NYMS' tariff and have nothing to do with the dispute in this case, which is not

whether Plaintiff was overcharged or paid more than the estimate provided, but whether her

claims for damage and loss are limited because she failed to select a higher level of coverage for

an increased price after a reasonable opportunity to make that choice.

       **b.**   **Defendant NYMS Gave Plaintiff a Reasonable Opportunity to Choose Between Two or More Levels of Liability.**

       To satisfy this element, "the carrier must provide only reasonable notice of the

opportunity to declare a higher value" to secure a greater level of liability.[52] "The requirement of

a written agreement ensures that the shipper is making an absolute, deliberate and well-informed

choice to accept released rate valuation in exchange for lower rates charged by the carrier."[53] The

Tenth Circuit has explained:

> In order for a limitation of liability to be valid under the 'released value doctrine,'
> the carrier must present the shipper with a reasonable opportunity to declare a
> value for the shipment above the maximum value set by the carrier, pay an
> additional fee, and thereby be insured at a higher rate should the shipment go
> awry. It is not necessary that an employee of the carrier explain the option to

---

[51] *Id.*

[52] *Norton v. Jim Phillips Horse Transp., Inc.*, 901 F.2d 821, 825 (10th Cir. 1989) (quoting *Husman Const. Co. v. Purolator Courier Corp.*, 832 F.2d 459, 461 (8th Cir. 1987)).

[53] *Id.* at 825 (citation and internal quotation marks omitted).

declare a higher value to the shipper. Rather, ***the carrier must provide only reasonable notice of the opportunity to declare a higher value***.[54]

On September 29, 2016, NYMS sent Plaintiff the written Binding Estimate, which explained two options for "Valuation Coverage."[55] The "standard movers minimum liability coverage" offered $0.60 per pound per article.[56] The "extended valuation coverage" option offered full replacement value "at 2.5% of the declared value of [the] shipment plus $65 processing. (Min of $5,000 coverage with $500 deductible)."[57] In red text beginning with "WARNING," the Binding Estimate also explained, "This form may also contain an estimate of the cost of a move in which the moving company is liable for FAR LESS than the replacement value of your goods, typically at a lower cost to you."[58] Plaintiff signed the Binding Estimate on the line immediately underneath this red-ink warning.[59]

On October 19, 2016, NYMS provided Plaintiff with two coverage options in the Bill of Lading, including the explanation that the standard coverage was included in the base price. The Full Replacement Value option noted it was the "most comprehensive plan available for protection of your goods."[60] Under this option, Plaintiff was given the opportunity to declare a value for the shipment or to accept a nominal valuation of $6,000 for the shipment. She could select among different deductibles or choose her own and, depending on the valuation of the shipment, the carrier would provide the cost estimate of the move with the greater liability and

[54] *Norton v. Jim Phillips Horse Transp., Inc.*, 901 F.2d 821, 825 (10th Cir. 1989) (emphasis omitted) (emphasis added).

[55] ECF No. 35-1 at NYMS-195.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] ECF No. 35-1 at NYMS-195–96.

[60] *Id.* at COOK-54.

enhanced protection. "Under this option the cost of [the] move will be composed of a base rate plus an added cost reflecting the cost of providing this full value cargo liability protection for your shipment."[61] Plaintiff did not select this option to declare a higher value, at an additional cost, for more coverage.[62]

Instead, Plaintiff selected the other option. The second option in the Bill of Lading explicitly provided for the minimal released value and cautioned Plaintiff to fill out this option "only if you wish to waive the Full (Replacement) Level of Protection."[63] Plaintiff signed the waiver and selected the minimal released value option.[64]

Additionally, both before and after Plaintiff declined to declare a higher value, selected minimal released value, and waived full replacement value, NYMS repeatedly encouraged Plaintiff to purchase insurance, noting that the included basic coverage was minimal. In an email on October 13, 2016, NYMS "highly recommend[ed] insuring any high value goods at the very least."[65] On October 22, 2016, Plaintiff stated she "will have to pass on the insurance, so deduct that," and noted, "If the big mover is that cautious, I'm sure I won't need to worry."[66] On October 24, 2016, NYMS again recommended additional coverage: "I would still advise to get the insurance, keep in mind you already have one box that is damaged so it is best to take out insurance just in case there is anything else that happens you will be covered. Better safe than sorry is my motto!" and sent Plaintiff a copy of the insurance forms a few days later.[67]

---

[61] *Id.* at COOK-54.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.* at COOK-74.

[66] *Id.*

[67] *Id.* at COOK-65, COOK-73.

On November 7, 2016, NYMS requested that Plaintiff "advise if you wish to insure your items."[68] Three days later, Plaintiff responded "I'm afraid I cannot afford to add additional insurance, just your basic. So Please just urge them to be careful."[69] In short, Plaintiff herself made it clear that she was not going to purchase additional coverage for a higher price.

The evidence of record clearly shows that Defendant NYMS provided Plaintiff a reasonable opportunity to select between two or more levels of liability. The Binding Estimate explained that Plaintiff could choose "minimum liability coverage" or "extended valuation coverage." In bright red, it contained an explicit warning that choosing the former would result in liability for "FAR LESS than the replacement value of your goods. . . ." Plaintiff signed the Binding Estimate immediately below this conspicuous warning. Three days later, Plaintiff received the Bill of Lading, which again told her she could select "Full (Replacement) Value Protection" or "Waiver of Full (Replacement) Value Protection" which would provide "only minimal protection" and limit liability to "60 Cents per Pound." She initialed next to the "60 Cents per Pound" and signed the waiver of full (replacement) protection. She also rejected repeated suggestions from NYMS that she purchase insurance to protect her household goods, instead urging the movers to be careful and stating that if they were, "I'm sure I won't need to worry."[70] Under binding Tenth Circuit case law, the question is not whether Plaintiff had a perfect understanding of her choices, sophistication about moving, or unlimited time to choose between levels of liability, but rather whether she had a "reasonable opportunity to declare a higher value." She did, but chose to expressly decline to declare a higher value.[71]

---

[68] *Id.* at COOK-72.

[69] *Id.* at COOK-67.

[70] *Id.*

[71] Plaintiff argues for ambiguities in and between the Tariff, the Binding Estimate, and the Bill of Lading, as well as asserting that Plaintiff was misled (Opposition, ECF No. 38, 34-42). Plaintiff also contends that Defendants did not

### c.   Defendant NYMS Obtained Plaintiff's Agreement as to Choice of Liability.

As explained, NYMS provided Plaintiff the options of basic coverage and full-replacement-value coverage for her household goods. Given these options, Plaintiff selected the basic coverage option. On its face, the Binding Estimate established the base rate for the move with the qualification that things may change, and the price may need to be adjusted. The Binding Estimate described this option as "[s]tandard movers minimum liability coverage of $0.60 per pound per lost/damaged article."[72] She acknowledged the Binding Estimate with her signature.[73]

The Bill of Lading explained both options in detail and instructed Plaintiff to complete the minimum liability option section "ONLY if you wish to Waive the Full (Replacement) Level of Protection."[74] Plaintiff signed the Waiver of Full Value Coverage in the Bill of Lading.[75] Plaintiff also inserted her initials next to the statement: "I wish to Release My Shipment to a MAXIMUM VALUE of 60 Cents per Pound per Article."[76] Defendants therefore obtained Plaintiff's agreement, in writing, as to her choice of liability.

---

comply with all federal regulations (Opposition, 42-46). These arguments miss the mark. This is not a case about ambiguities, misstatements, or regulatory missteps leading a Plaintiff to mistakenly fail to select greater coverage for a higher price. The Tenth Circuit has made it clear that the test is whether Plaintiff had a "reasonable opportunity to declare a value for the shipment above the maximum value set by the carrier, pay an additional fee, and thereby be insured at a higher rate should the shipment go awry." *Norton v. Jim Phillips Horse Transp., Inc.*, 901 F.2d 821, 825 (10th Cir. 1989). Plaintiff knew she could get higher coverage for an additional fee, but chose not to purchase it.

[72] ECF No. 35-1 at NYMS-195.

[73] *Id.*

[74] COOK-54.

[75] *Id.* at COOK-54.

[76] *Id.*

### d.  Defendant NYMS Issued a Bill of Lading.

The record shows that NYMS issued Plaintiff a Bill of Lading after the truck was loaded

but prior to the move.[77] Plaintiff's goods then were housed in a storage facility to await the

move, which occurred weeks later.[78] Plaintiff takes the view that the Bill of Lading issuance was

belated, but provides no argument and no authority.

In short, this is a case where Plaintiff twice was advised in writing of the opportunity to

declare a higher value for her goods. She chose not to declare a higher value. She also explicitly

chose, in writing, to waive replacement value coverage. And she rejected, in writing, multiple

email offers and suggestions from NYMS that she obtain additional protection through

insurance. Plaintiff was perfectly within her rights to do so. She was very worried about the cost

of the move and did not want to pay more for additional coverage, hoping instead that the

movers would be careful. But the law requires that under these circumstances the carrier's

liability is limited, just as the Binding Estimate and Bill of Lading warned Plaintiff that it would

be. Plaintiff had the opportunity to declare a higher value for her goods, pay an additional fee,

and "thereby be insured at a higher rate should the shipment go awry."[79] The shipment

apparently went awry, but because Plaintiff decided explicitly, in writing, to waive greater

coverage and not to declare a higher value and pay an additional fee, she did not obtain the

coverage she now seeks in court.

---

[77] Attachment D, Mazafi Depo. at 171:23–172:9, 198:4–8, 215:15–216:7, 232:19–23.

[78] Verified Complaint at ¶¶ 26, 27; Mazafi Depo. at 171:23–172:9.

[79] *Norton*, 901 F.2d at 825.

## II.   There Is No Evidence that Defendant White Glove Participated in Plaintiff's Move.

Plaintiff alleges that "NYMS entrusted White Glove and Dependable with Ms. Cook's goods, and White Glove and Dependable delivered only some of Ms. Cook's property to Salt Lake City, in damaged and diminished condition, and after several substantial delays."[80] Accordingly, Plaintiff asserts a claim against White Glove along with the other Defendants. Similarly, the New York Defendants assert crossclaims against White Glove and Dependable for their roles in the delivery of Plaintiff's shipment.[81]

The New York Defendants contend that White Glove may be liable because White Glove and Dependable are affiliated entities and because the trailer that delivered Plaintiff's goods had the phrase "White Glove Service" written on the side.[82]

In contrast to those arguments, there is no material evidence that White Glove had any involvement in Plaintiff's move. Plaintiff does not allege that she hired White Glove. Defendant NYMS acknowledged it did not retain White Glove for any services in the move.[83] Defendant Dependable also has stated that White Glove was not involved in the move and that the term "White Glove Service" refers to a type of service provided to customers. Defendant Dependable also produced evidence showing that it—not White Glove—owns and operates the trailer that delivered Plaintiff's household goods.[84]

The Supreme Court has made clear, "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

---

[80] Verified Complaint at ¶ 74.

[81] NYMS Crossclaim, ECF No. 6 at 13–15.

[82] Verified Complaint at ¶ 52.

[83] Mazafi Depo. at 332:11–333:20.

[84] *See* Minz Decl. and Exhibits, ECF No. 59-1 at 116–26.

doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[85] The requested

factual inference that White Glove transported Cook's goods does not reasonably follow from its

association with Dependable or from Dependable's trailer announcing "White Glove Service."

Therefore, the claims against Defendant White Glove must be dismissed.

## ORDER

For the reasons stated in this Memorandum Decision and Order, the court GRANTS the

New York Defendants' motion for partial summary judgment.[86] Plaintiff's motion for partial

summary judgment is DENIED.[87] Defendants Dependable and White Glove's motion for partial

summary judgment is GRANTED.[88] Plaintiff's claims against Defendant White Glove Moving

& Storage are dismissed with prejudice.

Signed September 28, 2020.

BY THE COURT

David Barlow
United States District Judge

---

[85] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

[86] ECF No. 35.

[87] ECF No. 40.

[88] ECF No. 59.